FILED
2007 Nov-30  AM 10:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TAMARA FERGUSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) **2:05-CV-1742-VEH** |
| **PLEASANT GROVE NURSING** | ) |
| **AND REHABILITATION CENTER,** | ) |
| **LLC; AURORA CARES, LLC;** | ) |
| **TARA CARES,** | ) |
| | ) |
| **Defendants.** | |

## MEMORANDUM OPINION

Before the Court is the Defendants, Pleasant Grove Nursing and Rehabilitation Center, LLC; Aurora Cares, LLC; and Tara Cares' (hereinafter "Pleasant Grove"), joint motion for summary judgment. (Doc. 15). This motion was opposed by Plaintiff, Tamara Ferguson (hereinafter "Ferguson"), fully briefed, and granted by the Magistrate Judge.  Pursuant to the Plaintiff's timely appeal of the Magistrate Judge's Findings and Recommendation (Doc. 39), it is now ripe for review.  Federal Rule of Civil Procedure  72(b) instructs the district judge to "make a de novo determination upon the record, or . . . additional evidence."  Having considered the briefs and evidentiary submissions, the court finds that Defendants' motion for summary

1

judgment (Doc. 16) is due to be granted in part and denied in part for the reasons outlined below.

## I. PROCEDURAL HISTORY

Ms. Ferguson filed an Equal Employment Opportunity Commission (EEOC) charge on February 14, 2005 alleging pregnancy discrimination and FMLA retaliation.

Plaintiff Ferguson subsequently initiated this lawsuit on July 22, 2005 by filing a complaint in state court. (Doc. 1, Part 2). The complaint asserts claims for: (1) Title VII sex and pregnancy discrimination (Count I); (2) retaliation under Title VII (Count II); (3) retaliation under the Family Medical Leave Act (FMLA) (Count III); and (4)Title VII race discrimination (Count IV).

Defendants' September 15, 2006 motion for summary judgment asserts that no genuine issue of material fact exists and that Pleasant Grove is entitled to judgment as a matter of law as to all claims asserted against it. (Doc. 15). On September 15, 2006 defendants submitted evidence[1] (Docs. 17-23) in support of the motion and also

---

[1]Defendants Pleasant Grove submitted: the deposition transcript of plaintiff with exhibits; the deposition transcript of Myra Hocutt with exhibits; the deposition transcript of Darrick Paul with exhibits; the deposition transcript of Alan Smith; the deposition transcript of Angela Beckwood with exhibits; the deposition transcript of Meg Deaton; the deposition transcript of Dana Ferguson with exhibits; the declaration of Myra Hocutt with exhibits; and the declaration of Dana Ferguson.

submitted a supporting brief. (Doc. 16).  Plaintiff submitted evidence[2] (Doc. 27) in

opposition to the motion for summary judgment on October 20, 2006 and on the same

date submitted a brief (Doc. 26) in opposition to defendants' motion for summary

judgment.  In responding to Pleasant Grove's motion for summary judgment, Ms.

Ferguson addresses only the pregnancy discrimination claim and the FMLA

retaliation claim; therefore, all other claims are abandoned. *Coalition for the*

*Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir.

2000).  On November 3, 2006, defendants filed a reply brief to plaintiff's opposition.

(Doc. 28).

The Magistrate Judge granted defendants' joint motion for summary judgment

in his Report and Recommendation on September 7, 2007. (Doc. 39).  The plaintiff

timely appealed to the District Court and filed her objections to the Magistrate

Judge's order on September 21, 2007. (Doc. 41).   The defendants submitted a

response to plaintiff's objections on October 5, 2007. (Doc. 42).

The motion for summary judgment (Doc. 15) is considered herein.

---

[2]Plaintiff Ferguson submitted: the declaration of plaintiff; the declaration of Myles
Harris; plaintiff's termination documents; defendants' discipline policy; defendants' activities
policies; plaintiff's Employer Response to Request FMLA; the deposition transcript of plaintiff;
the deposition transcript of Dana Ferguson; the deposition transcript of Myra Hocutt; and
defendants' audit report.

## II. STATEMENT OF FACTS[3]

Pleasant Grove Nursing and Rehabilitation Center, LLC is a long term care facility that provides nursing and rehabilitative care services to its residents, many of whom are elderly. (Ferguson Dep. 72-75, 151; Hocutt Decl. ¶ 3). Aurora Cares, LLC d/b/a Tara Cares is a corporation based in Orchard Park, New York and provides administrative, human resources, quality assurance, and other support services to long term care facilities, including Pleasant Grove. (Hocutt Dep. 26; Paul Dep. 10, 54). Tara Cares purchased control of the facility from a separate, unrelated company in the summer of 2003. (Ferguson Dep. 67, 81). Long term care facilities, including Pleasant Grove, are subject to rules issued by the Center for Medicare and Medicaid Services ("CMS") which are set out at 42 C.F.R. § 483. (Dana Decl. ¶ 5).

Ferguson began working at Pleasant Grove in June 2002 as the Activities

---

[3] These are the facts for summary judgment purposes only. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts") (citation omitted). Where the facts are in dispute, they are stated in the manner most favorable to the plaintiff, as the nonmoving party. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

For summary judgment purposes, it is proper for the court to cite to the factual history of a case by referencing the "admitted facts" and "additional admitted facts" as stipulated by the parties. In the present case, however, the parties' statements of facts do not correspond to each other as either "admitted" or "denied." Rather, each party offers its own version of the facts and neglects to admit or deny the other party's asserted factual history. Defendant's Reply contains no response whatsoever to Plaintiff's statement of facts. Therefore, the court will address the facts as established directly from the record.

Director. (Ferguson Dep. 67).  She continued in that capacity after Tara Cares purchased control. (Ferguson Dep. 67, 81).  Myra Hocutt (hereinafter "Hocutt") became the Executive Director of Pleasant Grove on September 13, 2004. (Hocutt Dep. 14-15; Smith Dep. 19).  As Activities Director, Ferguson reported directly to the Executive Director of the facility. (Ferguson Dep. 113, 118-19; Hocutt Decl ¶ 3). Ferguson was responsible for operating the Activities Department and supervised assistants who reported to her. (Ferguson Dep. Ex. 2; Hocutt Decl. ¶ 8).

When Hocutt arrived at Pleasant Grove, she decided to evaluate all departments in the facility by way of audit. (Hocutt Decl. ¶ 7).  When Hocutt arrived, she knew the facility had a number of deficiencies cited by the State, however, Hocutt does not recall any deficiencies in the Activities Department.[4] (Hocutt Dep. 90-91).  Hocutt testified that prior to the audit of the Activities Department, she had received complaints from residents, families, and staff regarding the department. (Hocutt Dep. 68).  She had also observed that activities listed on the calendar were not occurring as scheduled. (Hocutt Dep. 69).

The audit of the activities department was conducted by Dana Ferguson

_____

[4]If a state surveyor discovers that the facility has not followed or otherwise violated CMS's rules, the surveyor can cite the facility with a deficiency. (Dana Decl. ¶ 9).  Depending on the severity of the deficiency, the facility may be subject to resurveys, monetary fines, or even ejection from the CMS program. (*Id.*)

(hereinafter "Dana") and Angela Beckwood (hereinafter "Beckwood"). (Dana Decl. ¶¶ 13-14). Dana was an Activities Director with another facility to which Tara Cares provided consulting services; she had previously conducted four to five other audits of similar scope. (Hocutt Dep. 72, 73; Dana Dep. 18, 33). Beckwood was working as an Activities Assistant at another facility. (Beckwood Dep. 23, 57). Prior to the audit, neither Dana nor Beckwood knew either Ferguson or Hocutt. (Dana Dep. 34; Beckwood Dep. 80; Hocutt Dep. 73, 74). However, prior to the audit Hocutt planned to ask Beckwood to serve as Interim Activities Director during Ferguson's maternity leave. (Hocutt Dep. 77). Prior to the conclusion of the audit, Beckwood's job was posted as available by her facility. (Dana Dep. 26). After Ms. Ferguson's termination, Hocutt hired Beckwood as the new Activities Director. (Hocutt Dep. 76).

The audit was planned for five days, however it was actually conducted during a three day period from September 27, 2004 until September 29, 2004. (Dana Dep. 31; Dana Decl. ¶¶ 13-14). Ferguson was introduced to Dana and Beckwood, but was not given notice of the audit. (Dana Dep. 35-36; Ferguson Dep. 104-05). Hocutt, with the knowledge of Dana, told Ferguson that Dana and Beckwood were at the facility to help Ferguson. (Dana Dep. 35-36; Ferguson Dep. 96, 104). Later, Ferguson assumed that they were at the facility to check her department. (Ferguson Dep. 110). At the conclusion of the audit, Dana submitted an audit report which

6

identified many examples of problems or suggestions to the department. (Dana Decl. ¶ 15; Dana Decl. Ex. 3). Based exclusively on the results of the audit, Hocutt terminated Ms. Ferguson's employment on October 4, 2004. (Hocutt Dep. 163-64). The employee discipline memorandum stated:

> SUPERVISOR'S COMMENTS:
>
> 1.18 <u>Gross Negligence in performance of job duties</u>:
>
> All areas of the activity program requirements are not being met: Calendars, Recreation Program Categories, Program Planning; wants and needs of residents not met, Admission & Annual Assessment are lacking/untimely/inaccurate. Basic guidelines are not met.
>
> 1.16 <u>Falsification of facility records</u>:
>
> Falsified activity attendance records; notes are pre-dated on resident room sheets.
>
> EMPLOYEE'S COMMENTS:
>
> These are all flase [sic] accusations.

(Hocutt. Dep. Ex. 2). Ferguson was not given a copy of the audit prior to or at the time of termination. (Ferguson Decl. ¶¶ 9, 11; Hocutt Dep. 151-52).

Ferguson challenged the allegations at the time of her termination. (Hocutt Dep. Ex. 2). She also challenges the alleged deficiencies noted in the audit. (Ferguson Decl. ¶ 11). She was terminated on October 4, 2004; this was the same day that she verified with Carol McClammy in the personnel department that McClammy

had received FMLA papers for Ferguson's upcoming leave due to childbirth. (Ferguson Decl. ¶ 8). Prior to her termination, Ferguson had never received a "write-up" or disciplinary action. (Ferguson Dep. 129; Ferguson Decl. ¶ 10; Smith Dep. 37). Ferguson has testimony from a current resident of Pleasant Grove that he was never aware of any problems or complaints with the Activities Department scheduling during Ferguson's tenure. (Harris Decl. ¶¶ 3-5). According to the Human Resources Management Policy and Procedures under which Ferguson was employed, her offenses were rated as category one offenses. (Pl.'s Ex. D). According to the policy and procedures, an employee accused of category one offense should be suspended without pay pending an investigation and afforded an opportunity to give their side of the story during the investigation. (Pl.'s Ex. D at 2). Also, the "investigation should include interviews with all witnesses and review of all pertinent documents." (Pl.'s Ex. D at 2). Hocutt testified that the audit was considered the investigation. (Hocutt Dep. 66).

Based on the same audit and problems, Hocutt also considered terminating Gloria Vaughn, one of Ferguson's activities aides. (Hocutt Decl. ¶ 11). Instead, Hocutt decided to discipline her "[b]ecause Ms. Vaughn explained to me that she had performed her duties as she had always been instructed, she was an hourly employee who was not a department head, and she had worked at the facility for over twenty

8

years." (Hocutt Decl. ¶ 11).  There is no evidence that Vaughn was pregnant at the time of the audit. (Dana Dep. 108).  Hocutt knew that Ferguson was eight months pregnant when she terminated her. (Hocutt Dep. 155-56, 158-59).

In late September of 2004, Hocutt repeatedly asked Ferguson when she was going on leave. (Ferguson Dep. 96-98, 101-02, 116).  Hocutt said that she did not know who she would get to replace Ferguson during her leave. (Ferguson Dep. 96-98, 101-02, 116).  Ferguson had requested FMLA paperwork from McClammy before the audit and, as previously stated, was terminated the day that she asked McClammy whether she had received the FMLA papers for her upcoming leave. (Ferguson Dep. 97, 294; Ferguson Decl. ¶ 8).  Hocutt did not talk to McClammy about the FMLA request and did not know that Ferguson had requested FMLA leave; however, she testified that the normal procedure for pregnancy leave was to go through the FMLA process after the baby is born. (Hocutt Dep. 156).  Hocutt was aware that Ferguson had upcoming FMLA leave. (Hocutt Dep. 157-58).

Ferguson testified that she knew at least one other Pleasant Grove employee, a nurse named Emily, who went on maternity leave and returned to work. (Ferguson Dep. 299).  Also, as a direct result of a separate audit of the maintenance department, Hocutt terminated Tommy Acoff (hereinafter "Acoff"), the male maintenance director, for poor performance. (Hocutt Dep. 95-96; Hocutt Decl ¶ 12, Ex. 3).  Acoff

was terminated prior to the audit of Ferguson's department. (Hocutt 95-96, 116; Hocutt Decl. ¶ 12; Ex. 3).

### III. STANDARD ON SUMMARY JUDGMENT

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R .CIV. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was based on intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme

10

applies only in cases where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## IV. TITLE VII PREGNANCY DISCRIMINATION CLAIM

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a)(1). In *Armindo v. Padlocker, Inc.*, the Eleventh Circuit Court of Appeals recognized that

11

the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k),

> provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), applies with equal force to discrimination on the basis of "pregnancy, childbirth, or related medical conditions." Further, the PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits.

*Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000) (citations omitted).

## A. Direct Evidence

A plaintiff may prove a claim of discrimination through (1) direct evidence, (2) circumstantial evidence, or (3) statistical proof. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990). "[D]irect evidence is 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption." *Akouri v. State of Fla. Dep't of Transp.,* 408 F.3d 1338, 1347 (11th Cir. 2005) (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1393 (11th Cir. 1997)). "Evidence that only suggests discrimination . . . or that is subject to more than one interpretation . . . does not constitute direct evidence." *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir. 1997). "Only the most blatant remarks,

12

whose intent could be nothing other than to discriminate . . . constitute direct evidence of discrimination." *Carter v. Miami*, 870 F.2d 578, 582 (11th Cir. 1989). *See also*, *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999).  "An example of direct evidence would be a management memorandum saying, Fire [Defendant]-he is too old." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358-59 (11th Cir. 1999) (direct evidence "must indicate that the complained-of employment decision was *motivated* by the decisionmaker's" discrimination), *cert. denied*, 529 U.S. 1109 (2000).  "Remarks . . . unrelated to the decision-making process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Ferguson argues that there is direct evidence of both discriminatory and retaliatory animus. (Doc. 26 at 15).  She states that as soon as she requested FMLA leave in late September of 2004, Hocutt repeatedly asked her when she was going on leave and said that she did not know who she would get to replace her during her leave.  This is not direct evidence of either discriminatory nor retaliatory animus. This could just as easily be viewed as it appears on its face–as  concern that it would be difficult to fill Ferguson's shoes while she was on leave.

## B. Circumstantial Evidence

To the extent that Ferguson alternatively relies upon circumstantial evidence

to establish her claim, the court applies the burden-shifting framework established in *McDonnell Douglas Corp.* and *Burdine*.[5] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. *Burdine*, 450 U.S. at 252-253.  Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802).  This burden is one of production, not of persuasion. *Burdine,* 450 U.S. at 254.  Because it involves no credibility determination, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509 (1993), it is an "exceedingly light" burden. *Perryman v. Johnson Prod. Co.,* 698 F.2d 1138, 1141 (11th Cir. 1983).  The employer must simply articulate "a clear and reasonably specific" non-discriminatory basis for its actions to discharge its burden of production. *Burdine,* 450 U.S. at 254-55.

Finally, after the employer discharges its burden, the burden shifts back to the plaintiff to show that the reason offered by the employer was a pretext for

---

[5]  The Eleventh Circuit has specified that a PDA claim is evaluated within the *McDonnell Douglas/ Burdine* framework. *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383-84 (11th Cir. 1994).

discrimination or retaliation. *McDonnell Douglas,* 411 U.S. at 804.  The plaintiff must either prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination or "present sufficient evidence for a reasonable jury to conclude . . . that [discrimination] was a motivating factor for the employment [action]," even though defendant's legitimate reason may also be true or have played some role in the decision. *Desert Palace Inc. v. Costa*, 539 U.S. 30, 101; *see* 42 U.S.C. § 2000e-2(m).

At the pretext stage, the court's concern is not whether the employment decisions are prudent or fair but whether unlawful discriminatory or retaliatory animus motivates the challenged employment decision. *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir. 1999).  To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000).  This evidence must reveal "such weaknesses, implausibilities, inconsistencies, incoherences or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir. 2004), *cert. denied*, 546 U.S. 960 (2005).  The plaintiff may not

simply quarrel with the wisdom of the reason proffered "but must meet it head on and rebut it." *Chapman*, 229 F.3d at 1030. In summary, "[t]he court, considering all of the evidence, ascertains whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons, sufficient to allow a reasonable fact finder to determine that these reasons were not actually what motivated its conduct." *Cooley v. Great S. Wood Pres.*, 138 Fed.Appx. 149, 159 (11th Cir. 2005).

## 1. The Plaintiff has established a *prima facie* case through circumstantial evidence.

_____To establish a *prima facie* case of pregnancy discrimination, a plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse effect on her employment; and (4) that she suffered from differential application of work or disciplinary rules. *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994). Defendants argue that Ferguson has not satisfied the fourth element of a *prima facie* case because she has not identified similarly situated employees who were guilty of the same or similar misconduct or performance issues, but who were treated more leniently or disciplined in a different fashion. (Doc. 16 at 17).

### a. The Plaintiff has identified a similarly situated comparator who was treated more favorably.

Ferguson identifies Gloria Vaughn, one of her activities assistants, as a

similarly situated comparator who was treated more favorably. (Doc. 26 at 19).  She argues that although Hocutt considered terminating Vaughn based on the audit findings, she allowed Vaughn to explain her performance deficiencies and only gave her a "strong warning." (Hocutt Decl. ¶ 11).

Vaughn, an hourly employee under the supervision of Ferguson , was charged with a category two violation of poor work quality and productivity while Ferguson was charged with a category one violation. (Findings & Rec. at 9).  The supervisor's comments on Vaughn's employee memorandum were "Participation records are inaccurate, residents in-room sheets are pre-dated and pre-timed.  All documentation is inaccurate. Documentation is written in pencil and erased." (*Id.*)  The employee memorandum reflects Vaughn's comments to be "did not know." (*Id.*)   Hocutt testified that she considered in her decision that Vaughn gave an explanation for her conduct. (Hocutt Decl. ¶ 11).

In order for a comparator employee to be "similarly situated," the employee and the plaintiff must be similarly situated "in all relevant respects" or "nearly identical" to prevent courts from second-guessing a reasonable decision by the employer. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 534 U.S. 976 (2001); *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1273 (11th Cir.

17

2004) (explaining that "[w]hen comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides [protected class], since different treatment of dissimilarly situated persons does not violate civil rights laws.").

Defendants, citing *Wright v. Sanders Lead Co., Inc*, rely on the fact that Ferguson was a supervisor and Vaughn was an hourly, nonsupervisory employee. *See Wright v. Sanders Lead Co., Inc*., 217 Fed.Appx. 925 (11th Cir. 2007). However, in *Wright*, the court thought the most important aspect of finding a similarly situated employee is "to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Wright*, 217 Fed.Appx. at 929 (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). The court found that "comparing [plaintiff's] transgression (covering up wrongdoing) with [other employee's] (smoking) is akin to comparing apples to oranges." *Wright*, 217 Fed.Appx. at 929.

While *Wright* acknowledges that a supervisory position may provide context for difference in treatment, the Eleventh Circuit has specified that a plaintiff's "higher employment position in itself [cannot] defeat[] her prima facie case." *Pearson v. Macon-Bibb County Hospital Authority*, 952 F.2d 1274, 1280 (11th Cir. 1992). Rather, "[w]hat is relevant is that two employees are involved in or accused of the

18

same offense and are disciplined in different ways.  Differences in job status and skill may well have an impact on the second phrase of proof [in which the employer must produce a legitimate reason for the different treatment] but they should not defeat a prima facie case." *Pearson*, 952 F.2d at 1280 (quoting *Rhode v. K.O. Steel Castings, Inc.*, 649 F.2d 317 (5th Cir. 1981)).  Rather, "[t]he most important factors . . . are the nature of the offenses committed and the nature of the punishment imposed." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ.,* 342 F.3d 1281, 1289 (11th Cir. 2003) (quoting *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)).

Both Ferguson and Vaughn are accused of the same action and conduct.  They are accused of pre-dating resident room sheets and of poor work quality and negligence in the Activities Department.  While both are accused of the same pre-dating of forms, Ferguson's charge is seen as magnified as it is entitled a falsification of records as opposed to Vaughn's charge of inaccuracy.  As such, Ferguson alleges that she was treated differently in both violation type, procedure followed, and termination decision for the same alleged conduct.

"'[S]ummary judgment is not a proper vehicle for resolving claims of employment discrimination which . . . turn on an employer's motivation and intent.' While appellees offer much in explanation for the adverse employment decision in

question, conflicting evidence in the record nevertheless leaves material issues of fact for resolution." *Pearson*, 952 F.2d at 1280 (quoting *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641, 644 (11th Cir. 1987)).  As the court must view the evidence in the light most favorable to the nonmovant, it is apparent that genuine issues remain as to whether Ferguson and Vaughn should have been given the same opportunities for explanation under Pleasant Grove's procedure for employment termination.

### b. The Plaintiff has inferred discrimination due to the Defendants' violation of its own policy.

Ferguson also argues that she may prove the fourth element of her prima facie case by showing that "she suffered from differential application of work or disciplinary rules." *Armstrong v. Flowers Hosp. Inc.,* 33 F.3d 1308, 1314 (11th Cir. 1994).  Ferguson alleges that she need not identify a specific non-pregnant individual treated differently from her because Pleasant Grove violated its own policy in terminating her, citing *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1383 (11th Cir. 1994) (inference of pregnancy discrimination arose where employer fired pregnant employee for excessive absences despite employee having missed no more than her sick time allotted under company policy).  In *Byrd*, the Court stated:

> Lakeshore argues that in order to prove a PDA violation, Byrd additionally was required to show that other employees were treated better than she was, i.e. that they

20

> were neither denied the guaranteed sick leave benefits nor
> fired for availing themselves of them. We reject this
> argument because the only logical inference to be drawn in
> this case is that the Lakeshore policy customarily was
> followed. A contrary result would amount to a
> presumption, absent any further evidence from Byrd, that
> Lakeshore Hospital commonly discharges employees for
> taking their allotted sick leave time. If such is the case,
> then the burden was on Lakeshore to prove this unusual
> scenario.

*Byrd*, 30 F.3d at 1383.

Ferguson argues that she should have been suspended while an investigation was conducted, given a copy of the audit, and allowed to respond to the audit prior to her termination. According to Pleasant Grove's Human Resources Management Policy and Procedures, an employee who is accused of committing a category one offense, such as Ferguson, should be suspended without pay pending an investigation and afforded an opportunity to give her side of the story during the investigation. (Pl.'s Ex. D). There is no dispute that Ferguson was never suspended, informed that she was being accused, or given an opportunity to defend herself prior to her termination. (Hocutt Dep., pp. 66, 134, 141, 148; Dana Dep., pp. 58-59, 62, 76, 99-100). Defendants maintain that the audit took the place of the investigation and that Ferguson disputed the allegations against her as false at the time of her termination. As such, they contend that their policies were followed.

21

A general audit of the department is considerably different than an investigation into specific activities (which thereby gives notice to the employee). Also, questioning an employee during an investigation is substantially different than giving her room to speak after a decision has been made. As *Byrd* specifies, there is a "logical inference" that an employee policy is customarily followed. *Byrd*, 30 F.3d at 1383. As such, Ferguson has shown an inference of pregnancy discrimination.

As the Supreme Court has stated that the requirement of establishing a prima facie case was not "intended to be rigid, mechanized or ritualistic" or "onerous", the plaintiff here has established a *prima facie* case of employment discrimination. *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978); *Burdine*, 450 U.S. at 253.

**2. The Defendants have produced a nondiscriminatory reason for its actions**.

As Ferguson has established a *prima facie* case, Defendants have proffered a legitimate non-discriminatory reason for terminating Ferguson. Specifically, they maintain that she was terminated because of gross negligence and falsification of records as revealed in the September 2004 audit. Also, concerning the violation of Pleasant Grove's policy, Defendants address the challenge in *Byrd* by noting that the discipline policy was applied in the same fashion to both Ferguson and "Tommy Acoff, a male, non-pregnant department head who had not requested FMLA leave,

[who] was similarly terminated following a departmental audit without being suspended pending investigation." (Doc. 28 at 3).  Defendants claim that a separate investigation after the department audit would have been redundant, and that Ferguson disputed the allegations against her at the time of her termination.

### 3. A reasonable fact finder could find that defendants' reasons are pretext for discrimination.

In light of Defendants' proffer of legitimate non-discriminatory reasons for her termination, Ferguson must show by a preponderance of the evidence that the proffered reasons were a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).  An employee may show pretext for unlawful discrimination by combining the prima facie case "with sufficient evidence to find that the employer's asserted justification is false." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000); *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

The plaintiff "may attempt to establish . . . [proof] of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves,* 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 256).  Although this is only one form of circumstantial evidence, it "is probative of intentional discrimination, and it can be quite persuasive." *Reeves,* 530 U.S. at 147.  This is due to indirectly

23

demonstrating "that the employer acted with the forbidden animus." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1072 (3d Cir. 1996)).

Ferguson attempts to show pretext by arguing that the departmental audit gathered its information incorrectly, inconsistently, and superficially. (Doc. 26 at 23-24; Doc. 41 at 7-11). She states that the absence of negative reports or discipline supports a finding of pretext. (Doc. 26 at 22). Ferguson also relies on the fact that Pleasant Grove did not follow its own policies and procedures. (Doc. 26 at 22).

### a. There is an issue of material fact as Ferguson has directly challenged as pretext the reason for her termination.

Ferguson argues that "[i]t is clear from the audit report and Dana Ferguson's testimony that plaintiff's termination based on the audit was a pretext for discrimination." The department audit was not targeted as an investigation of Ferguson. (Dana Dep. 50). As such, the auditor made findings upon which she had no personal knowledge and did not specify nor investigate the cause of such

24

problems.   The auditor testified that many statements in the audit were merely opinions and not actual violations.  Also, she did not question Ferguson regarding any problems she found in the department.  Such weaknesses may be evidence of pretext. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 (11th Cir. 1997).

Also, the audit report is not consistent with Hocutt's reasons to terminate Ferguson.   Hocutt testified that she terminated Ferguson for gross negligence in the performance of her duties and falsification of facility records.  However, the audit report does not specifically accuse Plaintiff individually as having falsified any document, nor does it indicate that Plaintiff was ever aware that a document was being falsified and permitted it to occur. (Pl.'s Exh. J).  In fact, Dana did not indicate in the audit report or in her declaration that she ever witnessed Ferguson falsifying any records. (Dana Decl. ¶ 18).  The Plaintiff is allowed to demonstrate pretext by "[c]asting doubt on an employer's asserted reasons for an adverse employment action." *Chapman v. AI Transport*, 229 F.3d 1012, 1050 (11th Cir. 2000).  This inconsistency may be evidence of pretext. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 (11th Cir. 1997).

### b. Ferguson has offered her lack of prior complaints as inference of pretext.

Ferguson argues that the absence of negative reports or discipline supports a

25

finding of pretext. (Doc. 26 at 22). "[T]he lack of complaints or disciplinary reports in an employee's personnel file may support a finding of pretext." *Wascura v. City of South Miami,* 257 F.3d 1238, 1245 (11th Cir. 2001). The lack of reports is not determinative, however, especially as Hocutt had recently become executive director. The fact that Ferguson had not received negative reports or disciplines under Hocutt's predecessor does not create a genuine issue of fact on the question of pretext. "Different supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important." *Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir. 2002). Nothing in the record indicates that Hocutt singled out Ferguson. To the contrary, Hocutt elected to evaluate all departments in the facility by way of audit. She fired the male maintenance supervisor following the audit – just as she did Ferguson.

Ferguson states that "there is no evidence of any deficiencies pertaining to [her] or the Activities Department cited during the State audit conducted while [she] was Activities Director." Hocutt said she did not recall whether there were any deficiencies pertaining to Ferguson or the activities department cited in the State audit. (Smith Dep. 35; Hocutt Dep. 90-91). Although this undisputed testimony is not determinative, it, combined with other information, could also be used as evidence of pretext.

### c. There is an issue of material fact as Ferguson submitted evidence that the Defendants do not adhere to their own policies.

Even if there were violations, Ferguson argues that Defendants violated their own discipline policy in terminating her. (Doc. 26 at 22).  Proof that an employer failed to follow its established policies in reaching an employment decision may be evidence of pretext. *See Bass v. Board of County Commissioners*, 256 F.3d 1095, 1108 (11th Cir. 2001); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006).  Specifically, Ferguson argues that she was not suspended, there was not an investigation, and she did not have an opportunity to present her side of the story before being terminated.  Even with a deviation from policy, "[t]o establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n. 4 (11th Cir. 2002).

Here, both Ferguson and Pleasant Grove have presented arguable similarly situated comparators outside of the protected class.  Vaughn, as discussed above, was a nonsupervisory employee who was involved in or accused of the same or similar conduct.  Vaughn was given an opportunity to explain herself prior to a termination decision and was not terminated.  Acoff, the male maintenance director, was terminated immediately based on unfavorable audit results.  Acoff was not first

27

suspended pending a separate investigation. As there are two possible comparators, genuine issues of material fact exist concerning the discriminatory intent of violating established termination policies.

When read in the light most favorable to Ferguson, the evidence indicates that there is at least a genuine issue of material fact as to the inconsistent reasons for termination, the actions taken toward comparators, the lack of prior complaints or problems, and the violations of Pleasant Grove's internal policy.  Although Pleasant Grove has articulated a legitimate, nondiscriminatory reason for the termination, there is enough evidence from which a reasonable trier of fact could disbelieve rather than disagree with Defendants' articulated reason. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997).   Therefore, Defendants' motion for summary judgment as it relates to Plaintiff's Title VII pregnancy discrimination claim is due to be denied.

## V. FMLA RETALIATION CLAIM

The burden shifting framework analysis of *McDonnell Douglas* also applies to FMLA retaliation claims that are based on circumstantial evidence of discriminatory intent. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).   In *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, the

28

Eleventh Circuit stated:

> [T]o succeed on a [FMLA] retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. ... In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus."

*Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).  Also, "[t]he FMLA does not insulate an employee who has requested medical leave from being terminated for poor performance." *Gamba v. City of Sunrise,* 157 Fed.Appx. 112 (11th Cir. 2005).

## A. The Plaintiff has established a *prima facie* case through circumstantial evidence.

"To establish a *prima facie* case of [FMLA] retaliation, the plaintiff must show that: (1) [s]he engaged in statutorily protected activity; (2) [s]he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006).  The plaintiff need only show "that the protected activity and the negative employment action are not completely unrelated." *Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994); *see also*

*Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999). "Close temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Meeks v. Computer Associates,* 15 F.3d at 1021; *see also Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("Proximity in time is sufficient to raise an inference of causation.") (quoting *Bechtel Const. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir. 1995)). Also, "[i]n order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomm.*, 231 F.3d at 799.

It is undisputed that Ferguson both applied for FMLA leave and suffered from the adverse employment decision of discharge. However, Defendants argue that Ferguson cannot establish a *prima facie* retaliation claim because she has failed to establish the causal connection required of element three. Specifically, Defendants argue that Ferguson has failed to show that Defendants' actions were motivated by retaliatory or discriminatory animus and has merely speculated as to Pleasant Grove's reasons for her termination. (Doc. 16 at 27).

Ferguson claims that Hocutt began repeatedly asking her when she was going on leave and expressed her frustration that she did not have anyone to replace her

30

while she was on leave. (Ferguson Dep. 96-98, 101-102, 116). Less than two weeks later, Ferguson requested the status of her FLMA request and was terminated on the same day. (Ferguson Decl. ¶ 8). Also, although Hocutt did not handle the FMLA paperwork, she knew that Ferguson's upcoming leave was imminent. (Hocutt Dep. 157-58). This close temporal proximity between the known protected activity and the termination satisfies the prima facie requirement.

## B. The Defendants have produced a nondiscriminatory reason for their action.

Defendants have stated legitimate, non-retaliatory reasons for terminating the Plaintiff. Specifically, Pleasant Grove maintains that Ferguson was terminated due to the apparent problems unearthed during the September 2004 audit. (*See supra* section IV.B.2).

## C. A reasonable fact finder could find that Defendants' reason is pretext for discrimination.

As Pleasant Grove has satisfied the burden of production, the presumption of discrimination created by the *prima facie* case is eliminated and Ferguson must come forward with evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons" for discharge. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000). Ferguson must establish

evidence from which a reasonable trier of fact could disbelieve rather than disagree with Defendant's articulated legitimate, nondiscriminatory reason for the adverse employment action. *See Combs v. Plantation Pattersn,* 106 F.3d 1519, 1543 (11th Cir. 1997).

Ferguson relies upon her same arguments to establish pretext as presented with regard to her Title VII claim. Specifically, Ferguson argues that the departmental audit gathered its information incorrectly, inconsistently, and superficially. Also, she relies upon the absence of negative reports or complaints in her file as well as the fact that Pleasant Grove violated its own policies and procedures in handling her termination. (*See supra* section IV.B.3). Again, when read in the light most favorable to Ferguson, the evidence indicates that there is at least a genuine issue of material fact as to the inconsistent reasons for termination, the actions taken toward similarly situated comparators, the lack of prior complaints or problems, the violations of Pleasant Grove's internal policy, and Hocutt's comments towards Ferguson after Ferguson's request for FMLA leave. Although Pleasant Grove has articulated a legitimate, nondiscriminatory reason for the termination, there is enough evidence from which a reasonable trier of fact could disbelieve rather than disagree with Defendants' articulated reason. *See Combs,* 106 F.3d at 1543. Therefore, Defendants' motion for summary judgment as it relates to Plaintiff's FMLA retaliation claim is

32

due to be denied.

## VI. TITLE VII RETALIATION CLAIM

While Ms. Ferguson does not distinguish between the Title VII retaliation claim and the FMLA retaliation claim, the only protected conduct identified by Ms. Ferguson is her request for leave under the FMLA.  To establish a prima facie case of retaliation under Title VII, the plaintiff must first establish that she opposed a "practice made . . . unlawful" by Title VII or participated in "an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).  Here, the only alleged unlawful practice under Title VII is Ms. Ferguson's termination.  Because Ms. Ferguson "failed to produce evidence that [Pleasant Grove] adversely affected the terms or conditions of her employment after her termination", she has not established a prima facie case of retaliation. *Evans v. Boyd Restaurant Group, LLC,* 2007 WL 2613721 (11th Cir. 2007).  As such, the only retaliation claim before the court is the FMLA retaliation claim.  Defendants' motion for summary judgment as it relates to Plaintiff's Title VII retaliation claim is due to be granted.

## VII. TITLE VII RACE DISCRIMINATION CLAIM

Although the Complaint contains allegations of race discrimination under 42 U.S.C. § 1981, Ferguson testified in her deposition that she has not been

discriminated against on the basis of race. (Ferguson Dep. 281, 304).   Also, Ferguson's response did not dispute or address this issue. (Doc. 26).   Therefore, Defendants' motion for summary judgment as it relates to Plaintiff's Title VII race discrimination claim is due to be granted.

## VIII. CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the requirements are met of both the Title VII sex and pregnancy discrimination and FMLA retaliation claims.  For the reasons stated above, Defendants' Joint Motion for Summary Judgment (Doc. 16) is due to be: **DENIED** as to Count I (Title VII sex and pregnancy discrimination); **GRANTED** as to Count II (Title VII retaliation); **DENIED**  as to Count III (FMLA retaliation); and **GRANTED** as to Count IV (Title VII race discrimination).  A separate Order will be entered consistent with this Memorandum Opinion.

**DONE** this the 30th day of November, 2007.

**VIRGINIA EMERSON HOPKINS**
United States District Judge